### 43364. ROMINE, INC. v. SAVANNAH STEEL COMPANY, INC.

JORDAN, Presiding Judge. Savannah Steel Company, Inc. brought suit against Romine, Inc., to recover an alleged balance due of $3,788.04 on a contract to supply the defendant with its steel requirements in performing a contract with the United States Government. The defendant, Romine, Inc., admitted a portion of the indebtedness, but contends that the amount of $2,725 on a purchase order submitted to the plaintiff as the cost of all reinforcing steel for concrete paving, is not alone determinative of the amount due for such steel requirements, and claims a credit of $2,474 for steel not required, shipped, or delivered. The trial judge considered the pleadings and depositions, granted a summary judgment for the plaintiff in the full amount sought, and simultaneously denied the motion of the defendant for a summary judgment. The defendant appeals from this order. *Held:*

1. "The cardinal rule of construction is to ascertain the intention of the parties. If that intention be clear, and it contravenes no rule of law, and sufficient words be used to arrive at the intention, it shall be enforced, irrespective of all technical or arbitrary rules of construction." *Code* § 20-702. The language used by the parties is of primary consideration. *National Bank of Monroe v. Wright,* 77 Ga. App. 272, 276 (48 SE2d 306) ; *McKibben v. Fourth Nat. Bank of Macon,* 32 Ga. App. 222 (122 SE 891). "The intention of the parties is determined from a consideration of the entire contract." *Spooner v. Dykes,* 174 Ga. 767 (2) (163 SE 889). It is proper to consider correspondence between the parties leading up to the contract. *Caddick Milling Co. v. Moultrie Grocery Co.,* 22 Ga. App. 524 (2) (96 SE 583).

2. "If the consideration be founded in a mistake of fact or of law, the promise founded thereon cannot be enforced." *Code* § 20-308. One seeking to avoid the obligation of a contract by a defense of mutual mistake in a court of law is bound by

■

the same principles as in a court of equity. *Mangham v. Hotel &c. Supply Co.*, 107 Ga. App. 619 (131 SE2d 74). "If the consideration, apparently good or valuable, fails either wholly or in part before the promise is executed, such failure may be pleaded in defense to the promise. If it be partial, an apportionment must be made according to the facts of each case." *Code* § 20-310.

3. If a court determines as a matter of law that a provision of a contract is unconscionable when made, it may, among other things, so limit the application of any unconscionable provision to avoid an unconscionable result. *Code Ann.* § 109A-2—302. See discussion, Anderson's Uniform Commercial Code, Vol. 1, pp. 146-150. This provision is not designed, however, merely to relieve a party of a bad bargain. Ibid., p. 148.

4. Where a term is used in a contract which is intended to cover the requirements of the buyer as may occur in good faith, no quantity unreasonably disproportionate to any stated estimate may be tendered or demanded. *Code Ann.* § 109A-2—306. The agreed estimate is to be regarded as a center around which the parties intend the variation to occur. See Uniform Commercial Code, 1962 Official Text with Comments, published by The American Law Institute and Uniform Conference of Commissioners on Uniform State Laws, p. 75, Comment 4. The cited provision is applicable regardless of the character of the seller or buyer. See Anderson, supra, Vol. 1, p. 164. It would seem to follow logically that where the quantity actually delivered and accepted to meet the requirements of the buyer is unreasonably disproportionate to the estimated requirements, the lot price for the estimated total requirements is not a lot price for the actual requirements, although it may serve to establish a unit price therefor. This is tantamount to an apportionment of an executory contract as contemplated under the provisions of *Code* § 20-310, supra.

5. Applying the foregoing principles to the case at bar, where a contractor furnishes a steel supplier with the drawings and specifications on a proposed construction contract with the United States Government, and the supplier estimates the steel requirements, and furnishes the contractor with a written proposal to furnish, among other items, the necessary reinforcing steel for "concrete paving (15½ tons)—$2,725," and the contractor, upon the award of the construction con-

tract, submits a purchase order to the supplier for "all reinforcing required for concrete pavement, except for dowel pins, including support accessories 2725," which the supplier purports to fulfil, the intent of the parties is to be gathered from a consideration of both documents, and the order for "all" at the stated price of "$2,725" is to be construed as conditioned upon the recognized estimate of 15½ tons, in the absence of anything to the contrary appearing in the documents, or otherwise. In brief, that part of the proposal showing "15½ tons" is not without meaning in construing the contract. Actually both the purchase order and the proposal are deficient in many respects unless explained by the requirements of the government contract on which the proposal and order are based. Construed in this manner, the amount of $2,725 is the "quid pro quo" for "all" of the steel required in terms centering around "15½ tons" and the intent of the parties cannot be enlarged upon to the extent of limiting the total price to $2,725 if the amount of steel, as required and delivered, is grossly disproportionate to 15½ tons, either above or below such stated amount. Under such circumstances the monetary consideration due the supplier under the contract is for determination based on all the steel actually furnished in terms of the price per ton at the rate of 15½ tons for $2,725.

6. It is obvious from the record before this court that the estimate of steel requirements as shown in the contract is grossly disproportionate to the actual requirements, and that this situation arose as the result of a mistake without fault of either party. The drawings and specifications prepared by the government made it appear that reinforcing steel would be required for 3,438 square yards of concrete paving, but the government informed the contractor and the contractor notified the supplier that this was not true, as only 316 square yards required reinforcing steel. In fact, the remainder was unacceptable if constructed with reinforcing steel. The supplier apparently delivered the steel as required for 316 square yards of paving and the claimed credit of $2,474 by the defendant for 3,122 square yards not requiring steel appears to be an apportionment on this basis. But there is no evidence to show what steel was actually delivered by the supplier in terms of actual weight to support a computation of the amount due on a price per ton basis as the true consideration under the construction placed on the contract in the preceding di-

vision of this opinion. Thus, while the result may be substantially the same when there is proof of the amount of steel actually delivered, this issue is not resolved by the record before this court.

7. Under these circumstances the amount actually due the plaintiff is still in issue even though the plaintiff is entitled to judgment in some amount, and it was error for the trial judge to grant a summary judgment for the plaintiff in the full amount claimed, but he did not err in refusing to grant a summary judgment for the defendant.

*Judgment affirmed on the refusal of a summary judgment for the defendant; reversed on the grant of a summary judgment for the plaintiff. Pannell and Deen, JJ., concur.*

ARGUED JANUARY 15, 1968—DECIDED FEBRUARY 14, 1968— REHEARING DENIED FEBRUARY 29, 1968—CERT. ■

*Kravitch & Hendrix, Bart E. Shea,* for appellant.

*Pierce, Ranitz, Lee, Berry & Mahoney, John F. M. Ranitz, Jr., Howard A. McGlasson, Jr.,* for appellee.