A93A0580. FIRST UNION NATIONAL BANK OF GEORGIA
v. GURLEY.
(431 SE2d 379)

McMURRAY, Presiding Judge.

First Union National Bank of Georgia ("the bank") brought this action against Larry Gurley and other guarantors (who are not parties to the appeal) of a loan to Park Place Executive Center II, Ltd. ("Park Place"). Gurley denied liability on the affirmative defenses of fraud and failure of consideration. The trial court denied the bank's motion for directed verdict and the jury returned a verdict for Gurley. The bank moved for judgment n.o.v. and a new trial, and appeals from the denial of these motions. *Held*:

1. The bank contends that Gurley failed to prove his primary defense, that the bank fraudulently induced him to guarantee the loan by failing to disclose financial problems the Park Place development was having. It argues that no representations were made on behalf of the bank that could form the basis of a claim for actual fraud, and there was no confidential relationship with Gurley to create an affirmative duty of disclosure in order to find constructive fraud.

The undisputed evidence showed that Park Place Executive Center was an office and retail building constructed in 1984 and 50 percent owned by a real estate limited partnership. The bank's predecessor in interest provided the financing and took personal guaranties from the limited and general partners. Gurley was not an original investor but his business partner Glenn Carver was one of the project's developers and one of the three general partners. In 1987 Gurley and

Carver arranged to acquire the 20 percent limited partnership interest of J. Douglas Herman through their corporation Wellington Associates, Inc. ("Wellington") upon the bank's releasing Herman from his personal guaranty. The bank reviewed Gurley's personal financial data, decided that his assets were sufficiently substantial and agreed to release Herman from his guaranty when Wellington executed a guaranty in an equal amount and Gurley personally guaranteed Wellington's debt. After Gurley agreed, Roy Tritt, the attorney for Park Place, mailed him a letter enclosing the personal and corporate guaranties and explaining that the bank would release Herman as a result of the sale to Wellington. Herman signed a bill of sale and gave it to Tritt, who delivered it to Carver on behalf of Wellington, and the bank then notified Herman that he was released from his guaranty on March 15, 1988.

At trial, Gurley did not contest the existence of his personal guaranty or the amount of the debt, but claimed that the bank fraudulently induced him into signing by not informing him of prior delinquent payments by Park Place on the loan or a lawsuit brought against Park Place and the bank by three of the limited partners. On appeal he argues that the verdict was justified by evidence showing that all of the bank's dealings from the creation of Park Place until the time Gurley became a guarantor were handled by Tritt; that the bank agreed to release Herman only because he was a good customer they did not want to lose; that the bank collaborated with the general partners of Park Place to coordinate their defense against the lawsuit in which they were represented by Tritt; that the bank and Tritt remained silent in their dealings with Gurley and Wellington with the knowledge that these special circumstances would materially affect any investor's decision; and that under OCGA § 23-2-53 the particular circumstances were clearly such as to create a duty on the part of the bank to disclose these material facts within its peculiar knowledge to Gurley during its solicitation of the guaranty.

Neither the statutory nor case law supports Gurley's position, as the law is clear that a bank owes no legal duty to act as a customer's legal or financial advisor. "Suppression of a material fact which a party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." OCGA § 23-2-53. "A fiduciary or confidential relationship arises 'where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agents, etc.' OCGA § 23-2-58. . . . 'The mere fact that one reposes trust and confidence in another does not create a confidential rela-

tionship. "In the majority of business dealings, opposite parties have trust and confidence in each other's integrity, but there is no confidential relationship by this alone." [Cit.]' [Cit.]" *Kienel v. Lanier*, 190 Ga. App. 201, 202 (2), 203 (378 SE2d 359).

Here, as in *Pruett v. Commercial Bank of Ga.*, 206 Ga. App. 103, 104 (424 SE2d 284), "[t]he record reveals no confidential relationship between [Gurley and the bank] which would excuse the requirement that [Gurley] exercise ordinary diligence to protect [his] own interests. [Cit.]" As further stated in *American Demolition v. Hapeville Hotel &c. Partnership*, 202 Ga. App. 107, 108 (1), 109 (413 SE2d 749), "[t]here is no evidence to suggest that this transaction was anything other than an arm's length transaction between two professionals and there is no evidence that any special or confidential relationship existed to give rise to a duty to disclose." The trial transcript shows that prior to the execution of his guaranty Gurley never spoke to Tritt or to any representative of the bank, and never asked the bank for any information nor received any, false or otherwise. Rather, he acted in conjunction with his business partner Glenn Carver, who was president of Wellington, a general partner of Park Place and a co-defendant in the lawsuit. Thus information of any adverse circumstances was fully available to him through Carver.

"While concealment of material facts may amount to fraud when the concealment is of intrinsic qualities the other party could not discover by the exercise of ordinary care, [cit.], in an arms-length business or contractual relationship there is no obligation to disclose information which is equally available to both parties. [Cits.] Under such circumstances, actionable fraud cannot be shown unless the [party alleging fraud] exercised due care to discover the fraud. [Cit.] . . . ' "(T)here is no legal relief afforded when one 'blindly relied on the representations of the (other party) as to matters of which he could have informed himself.' " (Cits.)' [Cit.] The entire record is devoid of the slightest evidence that [Gurley] exercised any diligence or even ordinary care in ascertaining [Park Place's financial] status before entering into the [guaranty] agreement." (Indention omitted.) *Southern Intermodal Logistics v. Smith & Kelly Co.*, 190 Ga. App. 584, 585 (1), 586 (379 SE2d 612).

Through Carver, Gurley was in at least as good a position as the bank to analyze Park Place's financial condition, and his failure to investigate the matter shows a lack of due diligence. *Reeves v. Habersham Bank*, 254 Ga. 615, 617 (1) (331 SE2d 589). "There being no suggestion that the relationship between [Gurley and the bank] was anything other than an 'arms-length' business relationship, [Gurley] was not justified in looking to the bank for advice regarding the financial viability of the project, nor was the bank under any duty to list for him the various obstacles facing the successful completion of the

project. [Cits.]" *Casgar v. C & S Nat. Bank*, 188 Ga. App. 234, 235-236 (1) (372 SE2d 815). Accordingly, the bank was entitled to a directed verdict on the issue of fraud, and the trial court erroneously denied that motion and the motion for judgment n.o.v.

2. Gurley also raised the defense of lack of consideration due to the bank's failure to obtain a written consent of all the general partners for the substitution, sale or transfer of Herman's partnership interest to Wellington, which he asserts nullified the transfer and rendered the guaranties unenforceable. The bank contends that the valuable consideration was its relinquishment of Herman's guaranty in reliance upon the guaranties signed by Gurley. Gurley insists that this was properly a jury question since there was evidence from which the jury could find that the bank relied solely on Tritt's advice or its own business decision to cater to a good customer when it released Herman.

The evidence of record does not support this contention. The loan officer who serviced the Park Place loan testified that acting in reliance on the guaranties agreed to by Gurley and Wellington, the bank released Herman's guaranty upon receipt of the documents signed by Gurley. Gurley himself admitted on cross-examination that he received the letter stating the bank was going to release Herman once Gurley signed the guaranties; that he understood that this would happen; and that he knew the bank was going to act in reliance on his guaranties. Thus, pretermitting the issue of whether Wellington received an interest in Park Place, the undisputed evidence establishes that there was valid consideration for the guaranties.

Under current law, the mere lack of any personal consideration flowing directly to Gurley, standing alone, constituted no legal defense to his liability on the personal guaranty. *Griffin v. Georgia-Pacific Corp.*, 177 Ga. App. 852 (1) (341 SE2d 499). " 'The contract of suretyship or guaranty is one whereby a person obligates himself to pay the debt of another in consideration of a benefit flowing to the surety *or in consideration of credit . . . given to his principal. . . .*' OCGA § 10-7-1. [Emphasis in opinion.] [Cit.] It is undisputed that credit was extended to the corporate principal." *Virgil v. Kapplin*, 187 Ga. App. 206, 208 (3) (369 SE2d 808). See *Doyal v. Thornton*, 205 Ga. App. 74, 76 (1) (421 SE2d 314). " 'There is sufficient consideration to support an agreement to answer for the debt of another, when the creditor is thereby induced by the promisor to relinquish a valuable lien which he had acquired upon the property to secure the original debt. [Cits.] Accordingly, there remain[ed] no issue of fact as to consideration to be decided." *McGarr v. Bank of Pinehurst*, 159 Ga. App. 116 (1), 117 (282 SE2d 739).

While the evidence on appeal must be construed most strongly to uphold the verdict, "mere conflicts in the [evidence] do not render

the direction of a judgment erroneous when it appears that the conflicts are not material. [Cits.]" *Blalock v. Central Bank of Ga.*, 170 Ga. App. 140 (2) (316 SE2d 474). In the case sub judice, there was no jury question as to any genuine issue of material fact: it was undisputed that Wellington was indebted to the bank and the personal guaranty signed by Gurley guaranteed the indebtedness of the corporation. The evidence upon which Gurley relied was immaterial to the legal issues controlling his liability. " 'A directed verdict or judgment notwithstanding the verdict should be granted where construing the evidence in favor of the respondent a verdict is demanded in favor of the moving party. (Cits.)' [Cit.] Inasmuch as there was no evidence that the guaranty was not a complete and valid instrument which rendered [Gurley] liable for all amounts due under the [Wellington guaranty], the trial court [erred] by [not] granting j.n.o.v. in favor of [the bank]." *Pitts Truck Air v. Mack Trucks*, 173 Ga. App. 801, 802-803 (1) (328 SE2d 416).

3. It is unnecessary to consider the remaining enumerations of error concerning the admissibility of certain evidence and jury instructions.

*Judgment reversed. Beasley, P. J., and Cooper, J., concur.*

DECIDED APRIL 6, 1993 —
RECONSIDERATION DENIED MAY 13, 1993 ▮▮▮▮▮▮▮▮

*Knox & Zacks, Ted H. Clarkson, Ronald C. Melcher*, for appellant.

*Allgood, Childs, Mehrhof & Millians, Thomas F. Allgood, Jr.*, for appellee.