A94A1257, A94A1258. EVANS v. MERRILL LYNCH BUSINESS FINANCIAL SERVICES, INC.; and vice versa.
(446 SE2d 215)

BLACKBURN, Judge.

This is a combined appeal. In Case No. A94A1257, appellant C. Gary Evans appeals the trial court's order partially granting defendant Merrill Lynch Business Financial Services, Inc.'s motion for summary judgment. In Case No. A94A1258, Merrill Lynch cross-appeals the same order to the extent that the trial court denied its motion for summary judgment with regard to the amount of damages in excess of $200,000, owed by Evans to Merrill Lynch.

The underlying facts are not disputed. Evans, as president of Glen Restaurants, Inc., obtained a line of credit from Merrill Lynch's predecessor in interest. The line of credit was evidenced by a promissory note in the amount of $250,000. The note was secured by a security agreement granting Merrill Lynch a first-in-priority security interest in Glen Restaurants' furniture, fixtures, and equipment located at four locations. The note was further secured by an unconditional guaranty executed by Evans, individually. The note, security agreement, and guaranty were all executed on February 3, 1986.

Glen Restaurants defaulted under the terms of the note and se-

curity agreement and on August 23, 1990, Glen Restaurants filed a petition under Chapter 11 of Title 11, United States Code, in the Bankruptcy Court for the Northern District of Georgia. On January 18, 1991, Evans, individually, executed a financing agreement whereby he agreed to repay the $200,000 debt to Merrill Lynch. Merrill Lynch agreed to forebear enforcement of its remedies under the unconditional guaranty as long as Evans complied with the terms of the financing agreement. The financing agreement evidenced the parties' intent that Evans remain obligated to repay the debt under the terms of the unconditional guaranty. Also on January 18, 1991, and as further security for payment of the debt, Evans executed certain deeds to secure debt. The deeds granted Merrill Lynch a second-in-priority lien upon, security title to, and security interest in certain tracts of real estate.

Evans' payments to Merrill Lynch on the financing agreement were made late, missed entirely, and made in irregular amounts. Merrill Lynch notified Evans of his default on the financing agreement, and pursuant to the power of sale contained in the security deed, Merrill Lynch advertised a non-judicial foreclosure sale to be held on April 6, 1993. On April 5, 1993, Evans obtained a temporary restraining order enjoining Merrill Lynch from foreclosing upon the commercial real property listed in the security deed.

### Case No. A94A1257

1. Evans first contends that his liability under the guaranty was extinguished due to increased risk. OCGA § 10-7-22 provides, in pertinent part "[a]ny act of the creditor, either before or after judgment against the principal, which injures the surety or increases his risk or exposes him to greater liability shall discharge him." Evans argues that Merrill Lynch's conduct in loaning more than the $250,000 limit in the note increased the risk and released him from the guaranty. However, it is uncontroverted that the amount sought by Merrill Lynch from Evans does not exceed $250,000, see *White v. Chapman*, 149 Ga. App. 409 (3) (254 SE2d 434) (1979), and, furthermore, the extension of additional credit does not affect Evans' risk under the guaranty. See *Walter E. Heller & Co. v. Aetna Business Credit*, 158 Ga. App. 249, 263 (280 SE2d 144) (1981). Therefore, assuming arguendo that amounts in excess of the $250,000 limit were loaned, Evans remains liable under the unconditional guaranty.

2. Evans next contends that his liability under the unconditional guaranty was extinguished as Merrill Lynch failed to dispose of its collateral in a commercially reasonable manner. The equipment, listed in the security agreement as collateral for the note, became property of the bankruptcy estate after Glen Restaurants filed for

Chapter 11 bankruptcy. Thereafter, the bankruptcy trustee abandoned the equipment as valueless, and the storage facility manager sold it to pay for outstanding storage fees. Evans failed to show that Merrill Lynch obtained either constructive or actual possession of the equipment.

3. Evans contends that the financing agreement is unenforceable. First, Evans argues that the financing agreement fails for a lack of consideration. This argument is without merit as it is based upon Evans' contention that the unconditional guaranty was extinguished. However, in Divisions 1 and 2, we determined that the unconditional guaranty was not extinguished. Therefore, Merrill Lynch's agreement to forebear enforcement of its rights under the guaranty was sufficient consideration.

Next, Evans argues that the financing agreement was signed under duress. A duress claim must be supported by acts of the opposing party which are wrongful or unlawful. *Charter Med. Mgmt. Co. v. Ware Manor*, 159 Ga. App. 378 (3) (283 SE2d 330) (1981). In the case sub judice, Merrill Lynch had the right to enforce the unconditional guaranty against Evans. Therefore, Merrill Lynch's actions were neither wrongful nor unlawful.

4. Evans asserts that the security deed did not contain a power of sale sufficient to authorize a non-judicial foreclosure. Evans argues that the security deed does not grant Merrill Lynch the authority to act as Evans' agent or attorney-in-fact to conduct a non-judicial foreclosure sale. The security deed contains the following language: "AND the party of the first part further covenants and agrees that in case the debt hereby secured shall not be paid when it becomes due . . . the party of the second part . . . *may sell* the said property at public sale . . . and there upon execute and deliver to the purchaser at such sale a sufficient conveyance of said premises in FEE SIMPLE . . . which conveyance shall contain recitals as to the happening of the default upon which the *execution of the power of sale herein granted* depends, and the said party of the first part hereby constitutes and appoints the said party of the second part the agent and attorney-in-fact of said first party to make such recitals." (Emphasis supplied.)

The language in the security deed is plain and unambiguous. It not only provides that Merrill Lynch "may sell" the property, it also refers to the "power of sale" granted therein. See *Benton v. Patel*, 257 Ga. 669 (1) (362 SE2d 217) (1987). This language sufficiently establishes a power of sale granted to Merrill Lynch.

5. Evans admits that he missed several of his payments to Merrill Lynch entirely and that many payments were made late or for partial amounts due. Evans contends that Merrill Lynch's failure to provide notice of its intention to require strict compliance with the terms of the Financing Agreement, after its acceptance of late and irregular

payments, precludes Merrill Lynch from foreclosing. "As a general rule, evidence of acceptance by a creditor of repeated, late, irregular payments from a debtor creates a factual question as to the formation of a quasi new agreement. [Cits.] However, the evidence in this case shows without dispute that [Evans] was not merely late and irregular in making his payments but had failed altogether to make . . . payments which had become due as of the time the notice of foreclosure was published. Under these circumstances, [Merrill Lynch] clearly was entitled pursuant to the terms of the security agreement to accelerate the entire balance due and to institute foreclosure proceedings." *Lewis v. C & S Nat. Bank*, 174 Ga. App. 847, 848 (332 SE2d 11) (1985). See also *Borden v. Pope Jeep-Eagle*, 200 Ga. App. 176 (3) (407 SE2d 128) (1991).

6. A copy of the advertisement of the foreclosure sale under Merrill Lynch's power of sale was sufficient to provide Evans with notice of acceleration of the debt. *Lee v. O'Quinn*, 184 Ga. 44, 45 (190 SE 564) (1937).

7. Evans' efforts to establish a genuine issue of material fact are without merit. Thomas Soulsby's affidavit was properly considered by the trial court. The document attached to Soulsby's affidavit was properly qualified as a business record under OCGA § 24-3-14.

8. As the trial court was correct in granting Merrill Lynch's motion for summary judgment on Evans' main claims, the trial court was also correct in granting summary judgment on Evans' claims for punitive damages and attorney fees.

### Case No. A94A1258

9. In its cross-appeal, Merrill Lynch contends that the trial court erred in denying summary judgment on its counterclaim in that no genuine issue of material fact exists regarding the amount of debt owed by Evans. The trial court determined that, at least, $200,000 was owed Merrill Lynch, as a matter of law and that the only issue of fact remaining was whether the lender credited the last payment of $4,883.23[1] to the debt. However, during oral argument, counsel for Merrill Lynch stated that he would concede the difference between the amount of the last payment as established by Merrill Lynch and the amount of the last payment as established by Evans.

Merrill Lynch's concession resolved any dispute regarding the amount to be credited to Evans for the last payment. Therefore, the trial court should have entered judgment on Merrill Lynch's counterclaim in the amount of $207,496.05.

---

[1] The trial court incorrectly stated $4,288 in its order when referring to the last payment made by Evans.

*Judgment affirmed in part and reversed in part. Birdsong, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JUNE 15, 1994 —
RECONSIDERATION DENIED JULY 12, 1994 —

C. Gary Evans, *pro se.*
*Schwieger & Moore, Francis X. Moore,* for appellant.
*Rogers & Hardin, Amy S. Haney, Tony G. Powers,* for appellee.