A95A0563. LOTHRIDGE v. FIRST NATIONAL BANK OF GAINESVILLE.
(458 SE2d 887)

RUFFIN, Judge.

Jerry Lothridge appeals from the trial court's order granting partial summary judgment to First National Bank of Gainesville ("the bank"). The trial court ruled that Lothridge is liable to the bank for debts secured by a personal guaranty he signed, but that the amount of the debts had not been determined. On appeal, Lothridge contends

that genuine issues of material fact remain as to whether he is liable under the guaranty. Because we find the court correctly determined that Lothridge is liable to the bank under the guaranty, we affirm.

In 1987, Lothridge and Joe Vandegriff formed Mountain Lakes Resort, Inc. ("Mountain Lakes"), to purchase a resort known as Mountain Shadows. Mountain Lakes obtained financing of approximately $1,800,000 from the bank to purchase the resort and provide operating capital. In connection with the loan, Lothridge signed a personal continuing guaranty for repayment of 26.7 percent of "all present and future liabilities of [Mountain Lakes] to the Bank. . . ." The guaranty further provided that "termination [of the guaranty] shall not release [Lothridge] from liability for payment of (i) any and all liabilities . . . then in existence. . . ." Lothridge also executed a security deed to the bank on farm land he owned to serve as additional collateral for the bank's loans to Mountain Lakes.

On October 6, 1988, after disputes arose between Lothridge and other owners of Mountain Lakes, Lothridge filed a lawsuit. On February 23, 1989, Lothridge sent a letter to the bank notifying it that he would "not act as guarantor of any further indebtedness incurred by Mountain Lakes. . . ." Thereafter, the parties to that suit entered into settlement negotiations, and on January 3, 1990, the court ("1990 court") entered judgment based on the parties' settlement agreement ("1990 consent judgment"). Although the bank was not a party to that lawsuit, it agreed to the terms of the consent judgment because it was affected by some of the terms. When Mountain Lakes later defaulted on loan payments to the bank, the bank filed the instant action against Lothridge on the guaranty. Lothridge answered the complaint raising several affirmative defenses in the nature of release and discharge and filed a counterclaim against the bank.

1. Lothridge contends there remain genuine issues of material fact as to whether his termination of the guaranty affected his liability on loans made before termination. Because the guaranty contemplated a future course of dealing between the parties, the guaranty in this case was a continuing guaranty. See 38 CJS 1142, Guaranty, § 7. As such, it was not limited to a single transaction, but contemplated a series of divisible loans to Mountain Lakes and corresponding guaranties by Lothridge. See id. See also 1 Williston, The Law of Contracts, § 5:11 (4th ed. 1990). Both parties agree that Lothridge properly terminated the guaranty by written notice to the bank. But contrary to Lothridge's contentions, when he terminated the guaranty, that termination was effective only as to future loans made under the guaranty; the guaranty was not terminated as to loans and guaranties already extended. See *Fidelity Nat. Bank v. Reid*, 180 Ga. App. 428 (1) (348 SE2d 913) (1986). See also 38 AmJur 1062, Guaranty, § 60. Accordingly, the termination did not relieve Lothridge of liability to the

bank for debts incurred by Mountain Lakes before termination. See *W.E. Heller & Co. v. Aetna Business Credit*, 158 Ga. App. 249 (280 SE2d 144) (1981). Similarly, because the guaranty was not terminated as to loans and guaranties already made, Lothridge is bound by the terms of the guaranty as to those transactions and is not entitled to assert any defenses he waived in the guaranty. See *Davis v. Concord Commercial Corp.*, 209 Ga. App. 595 (2) (434 SE2d 571) (1993).

2. Lothridge also contends there are facts showing he was discharged from liability under the doctrine of increased risk. Lothridge argues he was discharged because the bank increased his risk by (a) increasing the amount of the loans to Mountain Lakes, (b) releasing other guarantors, and (c) releasing other collateral it held as security for the loans. We disagree.

(a) Although the bank continued to loan money to Mountain Lakes, it is uncontroverted that the bank was attempting only to recover unpaid loans made to Mountain Lakes prior to the time Lothridge terminated the guaranty. The extension of additional loans to Mountain Lakes after that time does not affect Lothridge's risk under the guaranty. See *Evans v. Merrill Lynch &c.*, 213 Ga. App. 808 (1) (446 SE2d 215) (1994).

(b) Neither is Lothridge discharged due to the bank releasing other guarantors. The guaranty provides that the bank may release any other obligor, guarantor or surety "without in any way affecting the obligation of [Lothridge]. . . ." Accordingly, Lothridge consented in advance to the bank releasing any other guarantors, which consent operates as a waiver of his right to assert that the release resulted in his discharge. See *Smith v. Great Southern &c.*, 184 Ga. App. 433 (1) (361 SE2d 847) (1987).

(c) Likewise, because Lothridge consented in the guaranty to the bank releasing other collateral, he waived his right to assert that the release of collateral resulted in his discharge. See *Panasonic Indus. Co. v. Hall*, 197 Ga. App. 860 (399 SE2d 733) (1990).

3. Lothridge contends that even if he was not discharged from liability under the guaranty, a jury issue remains as to whether it was the parties' intention in settling the earlier lawsuit to reduce the amount of his guaranty to $450,000. Paragraph 2 of the 1990 consent judgment provides in part that the farm land "is presently subject to a deed to secure debt. . . . Upon approval by the [bank], the conditioned indebtedness held by the [bank] on the [farm] shall be reduced to a deed to secure debt in the amount of [$450,000]. . . . This property shall not be used as collateral on any other debt which has been or may be incurred by Mountain Lakes or any other Defendant."

(a) Lothridge first argues this language clearly evidenced the bank's intention to reduce the amount of his personal guaranty to

$450,000. In support of his argument, Lothridge points to the language contained in the introductory recitals of the 1990 consent judgment generally providing that it was the intention of the parties to resolve all claims between them. Lothridge argues that to the extent this language is ambiguous, he is entitled to have a jury decide its meaning.

The meaning of the settlement terms incorporated into the 1990 consent judgment must be determined in accordance with the usual rules of contract construction. *Hortman v. Childress*, 162 Ga. App. 536 (292 SE2d 200) (1982). Under these rules, if the language is clear and unambiguous, no construction is required or even permissible by the trial court. If construction is required, then the first rule is to determine the intentions of the parties. *Darby v. Mathis*, 212 Ga. App. 444 (1) (441 SE2d 905) (1994). In making such a determination, it is proper to consider correspondence between the parties leading up to the contract. *Romine, Inc. v. Savannah Steel Co.*, 117 Ga. App. 353 (1) (160 SE2d 659) (1968). If the intentions of the parties differ and the meaning placed on the contract by one party is known to the other party at the time of execution, such construction will control. OCGA § 13-2-4. See also *Florence v. State Hwy. Bd.*, 57 Ga. App. 752 (196 SE 86) (1938).

Applying these rules to the 1990 consent judgment, we find no error in the trial court's construction. First, the plain and unambiguous language of Paragraph 2 of the 1990 consent judgment refers only to reducing the amount of Mountain Lakes' indebtedness secured by the deed on Lothridge's farm land; there is nothing in Paragraph 2 of the judgment referencing the parties' intention to reduce the amount of Lothridge's personal guaranty.

Furthermore, even if we were to assume an ambiguity existed, the trial court properly determined the intention of the parties according to the above rules. Shortly before entry of the 1990 consent judgment, the bank sent a letter to the trial judge stating its understanding that the settlement affected only the amount of the security deed and that there was no agreement between the parties that Lothridge would be released from his personal guaranty. The bank sent a copy of this letter to Lothridge's attorney. The bank's intention, as expressed in the letter, is not only consistent with the plain language of Paragraph 2, but since it was known to Lothridge at the time the 1990 court issued the 1990 consent judgment and the bank consented to the terms, that is the meaning which controls. See OCGA § 13-2-4.

(b) Lothridge also assigns error to the trial court's construction of language in the 1990 consent judgment providing that "[a]ll future payments made to the [bank] on the indebtedness of Mountain Lakes shall be applied first toward the reduction of the balance of the aforementioned [security deed on the farm land] until such time as the

Security Deed has been satisfied and released of record." However, the application of payments against the balance of the *security deed* is not an issue in this case, and aside from the arguments made by Lothridge that we rejected above, neither the parties nor the trial court has shown how this provision is related to the present lawsuit. In its complaint, the bank did not seek relief under its security deed; it sought only to recover amounts due from Lothridge under his personal guaranty. The provision at issue does not provide for application of payments to the guaranty balance. Accordingly, the provision at issue was not before the trial court, and that portion of its order addressing the provision must therefore be stricken. See generally *Brown v. Tomlison*, 246 Ga. 513 (272 SE2d 258) (1980).

4. Since we concluded in Division 3 that Lothridge's liability under the guaranty was not affected by the 1990 consent judgment, it is not necessary for us to consider Lothridge's assertions that the judgment constituted a novation and release of his obligations under the guaranty. Lothridge's argument that the trial court erred by granting the bank summary judgment on his counterclaim for breach of the settlement agreement and fraud is similarly without merit. Because we have already concluded that the bank did not agree to reduce Lothridge's liability under the guaranty, its refusal to do so would not constitute fraud or a breach of the agreement.

Moreover, Mountain Lakes' agreement to satisfy the farm land security deed after three years is not an obligation that Lothridge can unilaterally delegate to the bank. We know of no authority supporting such a proposition, and Lothridge has cited none.

5. Lothridge next contends the trial court erred in granting the bank summary judgment on his claim that the bank breached its duty of good faith and fair dealing. Lothridge generally contends that the bank breached these duties by taking action which frustrated his ability to collect money owed to him by Mountain Lakes under the 1990 consent judgment. We disagree.

The record in this case reveals that the bank and Lothridge were involved in nothing more than an arm's length relationship. See *First Union Nat. &c. v. Gurley*, 208 Ga. App. 647 (1) (431 SE2d 379) (1993). Under such relationship, Lothridge was under a duty to exercise ordinary diligence to protect his own interest, and the bank's primary duty was to protect the assets of its depositors and its interests in the security for its loans. See *Gurley* id. See also *First Fed. &c. of Brunswick v. Fretthold*, 195 Ga. App. 482 (394 SE2d 128) (1990). Although Lothridge has cited to authority that imposes a fiduciary duty on banks under certain circumstances, there is nothing in the record to suggest the bank owed such a duty to Lothridge in this case. See, e.g., *Fretthold*, id. Moreover, Lothridge has provided no authority suggesting that the bank was under a duty to ensure Mountain Lakes

could satisfy its debts to him, especially where such action could be in derogation of the bank's interest in protecting the security for its loans. Accordingly, we find no error.

6. Similarly, the trial court properly granted the bank summary judgment on Lothridge's claim that the bank tortiously interfered with his contract rights against Mountain Lakes under the 1990 consent judgment. In support of his assertion that the trial court erred, Lothridge relies on the same conduct referred to in Division 5, that the bank frustrated his ability to collect money from Mountain Lakes. But as we determined there, the bank was entitled to take action to protect the assets of its depositors and the security for its loans. See id. To establish a claim for tortious interference with contractual relations, Lothridge was required to show, among other things, that the bank acted improperly, without privilege and maliciously with the intent to injure. *Green v. Johnston Realty*, 212 Ga. App. 656 (4) (442 SE2d 843) (1994). Under such a claim "maliciously means any unauthorized interference or any interference without justification or excuse." Id. at 660. Because the bank was justified in taking the action of which Lothridge complains, we find no error. See id.

*Judgment affirmed in part, reversed in part and remanded with instructions. Beasley, C. J., and Pope, P. J., concur.*

DECIDED JULY 5, 1995 — 

*Webb, Tanner & Powell, A. Louise Tanner, Anthony O. L. Powell, Ralph L. Taylor III*, for appellant.

*Stewart, Melvin & Frost, J. Douglas Stewart, Davis, Matthews & Quigley, Ron L. Quigley*, for appellee.