**PUBLISH**

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
12/20/99
THOMAS K. KAHN
CLERK**

_____

No. 98-8193

_____

D. C. Docket No. 1:96-cv-1466-JEC

ST. CHARLES FOODS, INC.,

Plaintiff-Appellant,

versus

AMERICA'S FAVORITE CHICKEN COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(December 20, 1999)**

Before BIRCH and DUBINA, Circuit Judges, and MIDDLEBROOKS[*], District
Judge.

BIRCH, Circuit Judge:

_____

[*]**Honorable Donald M. Middlebrooks, U.S. District Judge for the Southern District of
Florida, sitting by designation.**

St. Charles Foods, Inc. ("SCF") appeals the district court's order granting summary judgment in favor of America's Favorite Chicken Company ("AFC") on SCF's complaint which alleged breach of contract and denying SCF's motion to amend its complaint. SCF argues, first, that summary judgment was improper because the ambiguity in its contract with AFC would allow a reasonable factfinder to draw different inferences from the undisputed facts and that the ambiguity should be construed against AFC as the drafter. Second, SCF argues that the liberal policy of allowing amendments to complaints under Federal Rule of Civil Procedure 15 requires that the district court allow SCF to amend its complaint. For the reasons that follow, we REVERSE the district court's order and REMAND this case for further proceedings consistent with this opinion.

## I. BACKGROUND

SCF entered into a franchise agreement with Popeye's Famous Fried Chicken Corporation ("PFFCC") in 1982. See R6-78-Adden. 1- Exh. 1. Under this agreement, SCF built its first Popeye's restaurant, and PFFCC granted SCF the exclusive right to develop Popeye's restaurants within St. Charles Parish, Louisiana, until 2002. In 1987, SCF developed its second Popeye's restaurant, and PFFCC extended SCF's exclusive development rights through 2007. See R6-78-Adden. 2-Exh. 2 at 2.

2

In 1989, PFFCC acquired the Church's Fried Chicken brand via a leveraged buy-out. Because Church's was a competing restaurant chain, PFFCC assured its Popeye's franchisees that they would be given a right of first refusal for any proposed development within their territory. Al Copeland Enterprises was created as a successor to PFFCC to manage both the Church's and the Popeye's brands. Al Copeland Enterprises filed for Chapter 11 bankruptcy in 1992. AFC emerged from the bankruptcy reorganization plan as the successor to Al Copeland Enterprises and as franchisor of the Popeye's and Church's restaurants.

In 1993, the owners of SCF, Richard and Marilyn Englander, began negotiations to sell SCF and its franchise rights to Edward Carlson, owner of a separate Popeye's franchise. Pursuant to a provision in the SCF franchise agreement granting AFC the right to approve any transfer of ownership, Edward Carlson ("E. Carlson") notified AFC of the proposed sale. As a condition to its approval of the sale, AFC required that SCF execute a new franchise agreement which would eliminate its exclusive right to develop Popeye's franchises within St. Charles Parish.

E. Carlson and his son Charles Carlson ("C. Carlson") (collectively, the "Carlsons") were concerned about the loss of SCF's territorial exclusivity and engaged in discussions with AFC representatives. As a result of these discussions,

3

AFC agreed to replace SCF's territorial exclusivity with a right of first refusal on "any proposed development with St. Charles Parish." 1SR1-101-Exh. 7. The terms of this right of first refusal were detailed in a letter dated October 29, 1993, from AFC's Vice President of Franchise Administration, Michael Anderson, to E. Carlson. See id. This letter was written on AFC letterhead, which displayed both the Popeye's and Church's logos. See id. On November 2, 1993, Anderson sent another letter to E. Carlson stating that "AFC ('Franchisor') will grant to St. Charles Foods, Inc. ('Franchisee') a right of first refusal for St. Charles Parish, Louisiana through April 10, 2007." R6-78-Adden. 9-Exh. 7-A. The letter explained that "Franchisor will notify [SCF] of any proposed development within St. Charles Parish, Louisiana and will specify the number of stores to be developed and timeframe for development. ... If Franchisee declines to exercise such right [of first refusal], Franchisor has the right to franchise within St. Charles Parish, Louisiana." Id. Again, this letter was written on letterhead displaying both the Church's and Popeye's service marks. See id. The Carlsons interpreted the Letter Agreements[1] as providing SCF a right of first refusal for any proposed development of any AFC brand within St. Charles Parish. See Exh. Dep. of E. Carlson at 71-72. In accordance with the change from territorial exclusivity to

_____

[1]We shall refer to the October 29, 1993 and November 2, 1993 letters collectively as the "Letter Agreements."

a right of first refusal within the territory, the purchase price for SCF was reduced by $100,000. See Exh. Dep. of Richard W. Englander, Jr. at 95-102.

In 1995, AFC began discussions with SCF regarding the development of a Church's restaurant within St. Charles Parish but ultimately granted the Church's franchise to Dugas Oil Company without extending a right of first refusal to SCF. In response, SCF filed a Petition for Injunctive Relief, Declaratory Judgment and Damages in Louisiana state court. See 1SR-101-1. The case was removed to federal court in the Eastern District of Louisiana and then transferred to the Northern District of Georgia, where the court denied SCF's motion to amend its complaint, granted AFC's motion for summary judgment, and dismissed SCF's case in its entirety.

The district court found that the contract between SCF and AFC, as memorialized in the Letter Agreements was "ambiguous as to the scope of the right of first refusal." R7-84-8. Applying Georgia law[2], the court then attempted to resolve the contract ambiguity using Georgia's rules of construction. See id. The district court determined that the past relationship between SCF and AFC would most likely suggest that the scope of the right of first refusal was limited to the development of new Popeye's restaurants within St. Charles Parish. See id. at 12. Specifically, the

---

[2]Because the parties consented in the Franchise Agreement that it would "be interpreted and construed under the laws of the State of Georgia," 1SR-101-Exh. 8-33, the district court applied Georgia contract law.

district court pointed to the facts that SCF had only dealt with AFC as the franchisor of Popeye's restaurants, that the territorial exclusivity which the right of first refusal replaced was limited to Popeye's restaurants, that SCF lacked evidence indicating that AFC intended to alter SCF's franchise relationship by granting it development rights in the Church's brand, and that the language in the franchise agreement between the parties preserved the right for AFC to compete with SCF through other franchise systems. See id. at 9-11. Finally, the district court denied SCF's motion to amend its complaint because its determination that AFC never offered SCF a right of first refusal for the Church's brand would dispose of the claims SCF sought to add to its complaint. Thus, the district court concluded that SCF's amendment would be futile.

Subsequently, the district court, when considering SCF's motion to vacate, found, even after considering three additional depositions, that SCF had failed to meet the standard required to withstand AFC's motion for summary judgment. See 2SR-103 at 4-5. The court sympathized with SCF and noted that AFC's actions "hardly seem[] to promote the team spirit;" however, the court remained unconvinced that SCF's interpretation of the letters from AFC could be accepted by a reasonable jury. Id. at 10. Therefore, the district court denied SCF's motion to vacate its grant of summary judgment. SCF now appeals.

## II. DISCUSSION

On appeal, SCF argues that the district court never made a specific finding that there was no genuine issue of material fact in dispute but instead made a legal determination that the contract between SCF and AFC was ambiguous and then resolved the ambiguity by attempting to ascertain the parties' intent. Second, SCF contends that the district court's weighing of the evidence and the inferences it drew therefrom were inappropriate on summary judgment. Third, SCF claims that the district court incorrectly applied the Georgia Rules of Statutory Construction in its attempt to resolve the contract ambiguity. Finally, SCF argues that because the district court's conclusion that AFC did not extend SCF a right of first refusal for both the Popeye's and Church's brands was inappropriate, the court's conclusion that SCF's amendment of its complaint would be futile was also incorrect.

In opposition, AFC suggests that the district court correctly determined that the contract between AFC and SCF was ambiguous as a matter of law and then, as required by Georgia law, properly ascertained the parties' intentions. Moreover, AFC claims that SCF failed to meet its burden of proof by not submitting any evidence supporting its interpretation of the scope of the right of first refusal. Finally, AFC argues that the district court correctly concluded that the amendment would be futile

because the district court's entry of summary judgment on SCF's existing complaint was proper and, therefore, AFC's amended complaint would also fail as a matter of law.

A.    SUMMARY JUDGMENT

We review de novo the district court's order granting summary judgment. See Williams v. Vitro Services Corp., 144 F.3d 1438, 1441 (11th Cir. 1998). A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). There is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). In making this assessment, we "must 'view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party,'" Maniccia v. Brown, 171 F.3d 1364, 1367 (11th Cir. 1999) (quoting Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F. 3d 1278, 1285 (11th Cir. 1997)), and "resolve

8

all reasonable doubts about the facts in favor of the non-movant," United of Omaha

Life Ins. v. Sun Life Ins. Co., 894 F.2d 1555, 1558 (11th Cir. 1990).  Further, "[i]f

reasonable minds might differ on the inferences arising from undisputed facts, then

the court should deny summary judgment."  Warrior Tombigbee Transp. Co. v. M/V

Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983) (finding summary judgment "may

be inappropriate where the parties agree on the basic facts, but disagree about the

factual inferences that should be drawn from these facts").

Because the parties consented in the Franchise Agreement that it would "be

interpreted and construed under the laws of the State of Georgia," 1SR-101-Exh. 8-33

at § XXV,¶ A, we apply Georgia contract law.  Under Georgia law,

> "[t]here are three steps in the process of contract construction.  The trial
> court must first decide whether the contract language is ambiguous; if it
> is ambiguous, the trial court must then apply the applicable rules of
> construction (OCGA § 13-2-2)[3]; if after doing so the trial court

---

**[3]O.C.G.A. § 13-2-2 provides nine rules for interpretation of contracts; these rules
provide, in pertinent part:**
> **(1) Parol evidence is inadmissible to add to, take from or vary a written
> contract ...;**
> **(2) Words generally bear their usual and common signification. ...;**
> **(3) The custom of any business or trade shall be binding only when it is
> of such universal practice as to justify the conclusion that it became, by
> implication, a part of the contract. ...;**
> **(4) The construction which will uphold a contract in whole and in every
> part is to be preferred, and the whole contract should be looked to in arriving
> at the construction of any part;**
> **(5) If the construction is doubtful, that which goes most strongly against
> the party executing the instrument or undertaking the obligation is generally
> to be preferred;**

determines that an ambiguity still remains, the jury must then resolve the ambiguity."

<u>Georgia-Pacific Corp. v. Lieberam</u>, 959 F.2d 901, 904 (11th Cir. 1992) (quoting <u>Copy Systems of Savannah, Inc. v. Page</u>, 197 Ga. App. 435, 436, 398 S.E.2d 784, 785 ( 1990); brackets in original). In the case at bar, the district court correctly determined that the scope of the right of first refusal granted by the Letter Agreements was ambiguous. <u>See</u> <u>International Bhd. of Boilermakers v. Local Lodge D111</u>, 858 F.2d 1559, 1561 (11th Cir. 1988) ("A contract term is ambiguous if it is reasonably susceptible of more than one interpretation."). However, the district court erroneously concluded that the applicable rules of construction resolved the ambiguity and limited the right of first refusal to the Popeye's brand.

As the district court noted, <u>see</u> R7-84 at 8; the "cardinal rule of construction is to ascertain the intention of the parties," O.C.G.A. § 13-2-3. <u>See also</u> <u>Georgia-Pacific</u>, 959 F. 2d at 905 (citing O.C.G.A. § 13-2-3 and <u>Hunsinger v. Lockheed Corp.</u>, 192 Ga. App. 781, 386 S.E.2d 537, 539 (1989)). When attempting to ascertain the intent of parties to a contract, the court should consider the language of the contract

---

**(6) The rules of grammatical construction usually govern. ...;**
**(7) When a contract is partly printed and partly written, the latter part is entitled to most consideration;**
**(8) Estates and grants by implication are not favored;**
**(9) Time is not generally of the essence of a contract ....**

in light of the surrounding circumstances, see Georgia R.R. Bank & Trust Co. v. Federal Deposit Ins. Corp., 758 F.2d 1548, 1552 (11th Cir. 1985); Paul v. Paul , 235 Ga. 382, 219 S.E.2d 736, 738-39 (1975), including the correspondence between the parties during the contract negotiations, see Romine, Inc. v. Savannah Steel Co., 117 Ga. App. 353, 160 S.E.2d 659, 660 (1968).  Enforcement of the parties' intent is superior to the other rules of construction, "if that intention is clear," the parties used "sufficient words ... to arrive at the intention," and "it contravenes no rule of law." Hunsinger, 386 S.E.2d at 539 (quoting O.C.G.A. § 13-2-3).  If, however, after applying the rules of construction, the intent of the parties continues to be disputed and capable of more than one interpretation, then it is a "factual matter for resolution by the jury and not a matter of law for determination by the court."  Crestlawn Memorial Park v. Scott, 146 Ga. App. 715, 247 S.E.2d 175, 177  (1978).

The evidence in this case can support the district court's conclusion that AFC did not intend to grant development rights in the Church's brand and, therefore, that the scope of the right of first refusal was limited to the Popeye's brand.  However, viewing all the evidence in the light most favorable to SCF, we find that the evidence also provides sufficient support to allow a rational fact-finder to conclude that AFC's grant of a right of first refusal to SCF for "any development," 1SR-1-101-Exh. 7 and R6-78 Adden. 9-Exh. 7-A, within St. Charles Parish included both the Popeye's and

11

the Church's brands. Specifically, the facts that the Popeye's franchisees believed they already had a right of first refusal covering the Church's brand and that the Church's logo was printed on the Letter Agreements could lead a rational factfinder to infer that right of first refusal granted by AFC in the Letter Agreements included both the Popeye's and Church's brands. See Empire Distrib, Inc. v. George L. Smith II Georgia World Congress Center Authority et. al., 235 Ga. App. 742, 744 (1998) (explaining that both extrinsic and parol evidence are admissible to explain ambiguity within a written contract); Cox Broadcasting Corp. et. al. v. National Collegiate Athletic Association et. al., 250 Ga. 391, 297 S.E.2d 733 (1982) (stating that courts may consider extrinsic evidence when deciding if there was a mutual assent to an agreement). See also Exh., Dep. of E.Carlson at 42-43 (testifying that he understood the scope SCF's territorial exclusivity to be the same as the territorial exclusivity of his other Popeye's franchise in Plaquemines Parish and, therefore, to include "all brands. Anything the parent company or franchiser [sic] was trying to sell or opening."); Exh., Dep. of C. Carlson at 38-43 (explaining that both the Englanders and his father, as long-time Popeye's franchisees, had told him that when the predecessor to AFC became the franchiser of the Church's brand, it sent its existing Popeye's franchisees letters assuring them that they would be given a right of first refusal on any Church's restaurants to be opened within the exclusive territory they

12

had been granted for their Popeye's franchise and even offered the Popeye's franchisees special financing to open Church's restaurants; and further explaining that, although he did not see any documentation that SCF held such a right of first refusal, he did not request this documentation because "as the transaction developed, we got that protection"); Exh., Dep. of Richard W. Englander, Jr. at 124-25 (stating that when AFC's predecessor acquired the Church's brand, SCF received a letter explaining the merits of the Church's acquisition and explaining that Popeye's "franchisees in a particular area, who wanted, would have first rights to acquire that Church's franchise."); Exh., Dep. of Marilyn H. Englander at 7 ("I was aware of that Church's, when it was bought by Popeyes, that we had the right to buy the Church's first in our parish.  There was a letter that was sent out to us and it soothed my feelings of what if someone came in on us.").

Moreover, we are persuaded that the rules of contract construction require that the ambiguity in this contract be construed against AFC.  See Georgia-Pacific Corp., 959 F.2d at 905 (It is well established [in Georgia] that any ambiguity in a contract is to be construed against the party who drafted it'") (quoting Crook v. West, 196 Ga. App. 4, 4-5, 395 S.E.2d 260, 261 (1990); brackets in original); see also O.C.G.A. § 13-2-2(5).  Michael Anderson, acting as an agent for AFC, drafted the Letter Agreements.  He used the term "any development within St. Charles Parish."

Applying the "usual and common signification" of these words, O.C.G.A. § 13-2-2(2), this term could be interpreted to mean "every [or] all" development contemplated by AFC. THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE, UNABR. 96 (2d ed. 1987). This interpretation seems all the more likely given the fact that the letters were written by an agent of both franchises on stationary displaying the logos of both franchises.

The district court found that "the best indicator of the parties' intent is their prior relationship." R7-84 at 9. Accordingly, the district court relied upon the fact that the SCF had only dealt with AFC as a Popeye's franchisee prior to the Letter Agreements as support for its conclusion that the right of first refusal should be limited to the Popeye's restaurants. In contrast, because the current and past owners of SCF were franchisees of Al Copeland Enterprises prior to the acquisition of the Church's brand, a reasonable jury could find that any assurances they may have received at the time that the Church's brand was acquired created a foundation within their past and existing relationship to support the interpretation that the Letter Agreements provided SCF a right of first refusal that included both the Popeye's and Church's brands within St. Charles Parish.

Similarly, the district court believed that an interpretation of the Letter Agreements to provide SCF a right of first refusal for both the Church's and Popeye's

14

brands was antithetical to the parties' franchise agreement provision which explicitly preserved AFC's right to compete with SCF's Popeye's restaurants via "other franchise systems," such as Church's. See R7-84 at 11 (applying O.C.G.A. § 13-2-2(4) by using "'the whole contract ... in arriving at the construction of any part'"). However, C. Carlson explained that SCF negotiated the right of first refusal in question as a response to the clause in a separate document, AFC's Uniform Franchise Offering Circular, that preserved AFC's right to compete against its Popeye's franchisees using the Church's brand. See Exh., Dep. of C. Carlson at 49-69. Given this background to the negotiations of the right of first refusal, a reasonable factfinder could conclude that the Letter Agreements were intended to limit the franchise agreement and provide SCF some protection against potential competition from Church's within St. Charles Parish. It is well established under Georgia law that parties have a right to change the terms of their agreement by subsequent agreements, so long as the subsequent agreement is supported by some consideration. See Nalley v. Hanover Fire Ins. Co., 56 Ga. App. 555, 193 S.E. 619, 626 (1937). Here, the Letter Agreements are supported by SCF relinquishing its territorial exclusivity and signing a new franchise agreement.[4]

---

[4]**We acknowledge that the clause in the franchise agreement whereby AFC retains the right to compete against its franchisees under a different set of proprietary marks has been enforced by other courts and found not to breach the implied covenants of good faith and fair dealing. See Clark v. America's Favorite Chicken Company, 110 F. 3d 295, 298 (5th Cir.**

15

Therefore, we conclude that because reasonable factfinders could interpret the Letter Agreements between SCF and AFC differently after applying the Georgia rules of contract construction, the contract remains ambiguous. Accordingly, we find that the district court erred in granting summary judgment and the ambiguity of the Letter Agreements should be left for a jury to resolve.

B.    <u>MOTION TO AMEND COMPLAINT</u>

SCF petitioned the district court for leave to amend its complaint by adding four causes of action based upon unfair trade practices, breach of implied covenants, detrimental reliance, and breach of other duties. <u>See</u> R5-70 at 6. Specifically, SCF alleged (1) that AFC "used unfair methods of competition and unfair or deceptive acts or practices in conducting its trade in violation of the Unfair Trade Practices and Consumer Protection Law;" <u>id.</u> at ¶ 26, (2) that AFC "breached its implied covenant of good faith and fair dealing by placing another franchise in direct competition with an existing franchisee;" <u>id.</u> at ¶ 27, (3) that SCF "detrimentally relied on promises and conduct of AFC, resulting in damages"; <u>id.</u> at ¶ 28, and (4) that AFC "breached other

**1997). However, this case hinges not on the validity of that clause within the franchise agreement, but on whether the Letter Agreements were intended to limit the application of that clause by providing SCF a right of first refusal for the development of both Popeye's and Church's restaurants in St. Charles Parish.**

16

duties and obligations owed to [SCF] under the prevailing circumstances," id. at ¶ 29. The district court found that "[a]ll of the claims plaintiff seeks to add to its complaint depend for their success on plaintiff's assertion that defendant breached an agreement to extend a right of first refusal for the Church's brand." R7-84 at 14. The district court concluded that its holding that AFC never promised to grant SCF a right of first refusal for the Church's brand "dispose[d] of all of the claims plaintiff seeks to add to its complaint." Id. at 15. Accordingly, the district court found that SCF's amendment of its complaint would be futile and, thus, denied the motion to amend.[5] Id.

When a district court denies the plaintiff leave to amend a complaint due to futility, the court is making the legal conclusion that the complaint, as amended, would necessarily fail. See Motorcity of Jacksonville, Ltd. v. Southeast Bank N.A., 83 F.3d 1317, 1323 (11th Cir. 1996), vacated on other grounds by Hess v. F.D.I.C., 519 U.S. 1087, 117 S. Ct. 760, 136 L. Ed. 2d 708 (1997), reinstated by Motorcity of Jacksonville, Ltd. v. Southeast Bank N.A., 120 F.3d 1140 (11th Cir. 1997), cert. denied, ___ U.S.___, 118 S. Ct. 1559, 140 L. Ed. 2d 791 (1998). We review de novo

---

**[5]The district court commented that it was inclined to agree with AFC that SCF's motion to amend its complaint is untimely since it was "submitted eighteen months after this case was filed and nearly a year after its docketing in this Court." R7-84 at 13-14. However, because the district court found that the amendments would be futile, it did not address the timeliness issue. Id. at 14.**

17

that conclusion of law.  See id.[6]  The district court based its finding that the additional causes of action which SCF sought to include in its complaint were futile on its earlier conclusion that AFC did not grant SCF a right of first refusal in the Church's brand. Our conclusion that the contract between SCF and AFC remains ambiguous after applying the Georgia rules of contract construction and that the scope of the right of first refusal AFC promised SCF must be determined by a jury, invalidates the district court's basis for denying the amendment.  Therefore, on remand the district court should reconsider whether, in light of this ruling, SCF's amendment to its complaint would be futile.[7]

## III.  CONCLUSION

Because genuine issues of material fact exist that preclude summary judgment, we REVERSE the district's court judgment and REMAND this case for further proceedings consistent with this opinion.

---

[6]**Generally, a court's refusal to allow a plaintiff to amend its complaint is reviewed for abuse of discretion, see Shipner v. Eastern Air Lines, Inc., 868 F.2d 401, 407 (11th Cir. 1989); however, when the denial is based upon a finding that amendment of the complaint as proposed would be futile, then the standard of review is** de novo, see Ochran v. United States, 117 F. 3d 495, 503 n. 3 (11th Cir. 1997).

[7]**In determining whether SCF's additional causes of action are viable, the district court should "focus precisely on the nature and contours of each."  Motorcity of Jacksonville, Ltd., 83 F.3d at 1338-39.**