A95A0265. CAMPOS et al. v. WILLIAMS.
(457 SE2d 243)

BIRDSONG, Presiding Judge.

Appellants, Quirino Campos et al., appeal the state court's order granting appellee Dairyland Insurance Company's motion for summary judgment against appellants Campos and Jose Gonzalez, and dismissing the complaint of said appellants/plaintiffs.

Suit for damages was brought by Campos, Gonzalez and Porfirio

Vasquez for injuries sustained in an automobile accident when a Nissan pickup driven by Willie Williams allegedly ran a red light and collided with a Ford pickup which was making a left turn. Gonzalez and Campos were passengers in the Ford pickup; Vasquez was the driver. The whereabouts of defendant Willie Williams are unknown and he has been served with process by publication. Dairyland Insurance Company has been served as the purported uninsured motorist carrier of plaintiff Porfirio Vasquez. Pursuant to OCGA § 33-7-11 et seq., Dairyland filed an answer in its own name averring settlement, accord and satisfaction, release, and payment of the claims of Campos and Gonzalez. Thereafter, Dairyland moved for summary judgment based on releases executed by Campos and Gonzalez who have never tendered return of the consideration received for the releases. Appellants' sole enumeration is that the trial court erred in granting summary judgment in favor of appellee Dairyland Insurance Company. *Held*:

1. The applicable summary judgment standard is that of *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474).

2. The enumeration of error does not reasonably encompass a claim that the trial court erred in dismissing "the complaint of [appellants/plaintiffs] Quirino Campos and Jose Gonzalez." Accordingly, the only appellate issue preserved by the enumeration is whether the trial court erred in granting summary judgment in favor of Dairyland Insurance Company. *Jones v. Sauls*, 213 Ga. App. 55, 58 (443 SE2d 693) (issue not reasonably contained within the enumeration of errors).

3. Separate documents entitled "Indemnity and Hold Harmless Agreement" were signed by appellants Campos and Gonzalez. These documents executed in consideration of a certain sum contained both release and hold harmless agreements. The release agreements are ambiguous in that the printed portion of each agreement purports, inter alia, to release and forever discharge, "Dairyland Insurance Company, Zamorano Porfirio Vasquez, and Porfirio Vasquez . . . from any and all, and all manner of, actions and causes of action . . . suits . . . judgments . . . claims and demands whatsoever in law or equity . . . and especially from all liability arising out of an occurrence that happened on or about September 19, 1991, at or near Chamblee, Atlanta, Ga." Immediately thereafter there appears this inserted typewritten sentence: "Notwithstanding the above, this *release* only applies to Porfirio Vasquez and is not to be construed as a release of any other parties including Willie Williams." Thereafter, in a numbered paragraph, the agreement contained a hold harmless clause whereby appellants Campos and Gonzalez agreed to indemnify and hold harmless the certain parties released from any and every claim or demand of every kind and character which may be asserted

by said appellants regarding or resulting from the incident. After signing the documents, appellants Campos and Gonzalez negotiated the settlement checks tendered by Dairyland; printed on the face of each check, in a block captioned "payment covers," were the words, "FULL AND FINAL SETTLEMENT OF ALL CLAIMS."

The release portion of the agreement is ambiguous whether only Porfirio Vasquez was released or whether Dairyland Insurance Company, Zamorano Porfirio Vasquez, and Porfirio Vasquez all were released thereby. Clearly each of these persons was "named" in the release within the meaning of *Lackey v. McDowell*, 262 Ga. 185 (415 SE2d 902). A release or settlement agreement is a form of contract subject to construction by the court. *Darby v. Mathis*, 212 Ga. App. 444 (1) (441 SE2d 905). Even ambiguous contracts are to be construed by the court and no jury question is presented unless after application of applicable rules of construction an ambiguity remains. *Travelers Ins. Co. v. Blakey*, 255 Ga. 699, 700 (342 SE2d 308).

Appellants, however, assert that in this case the controlling rule of contract construction is OCGA § 13-2-2 (7), which provides that when a contract is partly printed and partly written, the latter part is entitled to most consideration. Thus, appellants assert that the added typewritten portions of the contract must control over the printed portions of the agreement. We find, under the attendant circumstances, that this rule of construction is not controlling in this case. At the outset, we note that the major portion of the agreement not only was printed but had been tailored to list expressly in their printed portions the names of persons, including Dairyland, who were to be released, and the specific incident for which the release was to apply. The indemnity and hold harmless portions of the agreement were not merely part of a fill-in-the-blanks form. Accordingly, we find that the typewritten portions of the form were not necessarily intended by both parties to be controlling. Neither can we look to the basic rule that an ambiguous contract is to be construed against the maker, as the affidavit of the attorney who negotiated the releases for appellants reveals that the releases were modified after discussion with a representative of Dairyland. The only reasonable inference to be drawn from these facts is that the typewritten modification to the form either was made by appellants' negotiating attorney or, at a minimum, was the product of a joint effort between the parties. In either event, the ambiguity is not to be construed against Dairyland; we find the issue of who drafted the contract, in this instance, is at best a neutral factor. The cardinal rule of contract construction is to ascertain the intent of the parties. OCGA § 13-2-3. Pretermitting the issue whether Dairyland and the appellants all shared a common intent to release Dairyland from any and all claims arising from the incident is whether appellants Campos and Gonzalez knew of Dairy-

land's intent that it be so released and proceeded to sign the agreement, and subsequently to negotiate the settlement check. Either viewing the agreement on its four corners or viewing the agreement in its totality together with all relevant parol evidence of record, we reach the same result. Both appellants knew at the time they signed their respective release and hold harmless agreements that Dairyland intended to be released thereby. "The intention of the parties may differ among themselves. In such case, the meaning placed on the contract by one party and known to be thus understood by the other party at the time shall be held as the true meaning." OCGA § 13-2-4; *Borders v. Global Ins. Co.*, 208 Ga. App. 480, 483-484 (2) (430 SE2d 854). "[A] grant of summary judgment must be affirmed . . . if it is right for any reason." *Newsome v. Dept. of Human Resources*, 199 Ga. App. 419, 423 (3) (405 SE2d 61); accord *Hanna v. McWilliams*, 213 Ga. App. 648, 651 (3) (446 SE2d 741).

*Judgment affirmed. Johnson, J., concurs. Smith, J., concurs specially.*

SMITH, Judge, concurring specially.

While I concur in the result, I write specially to note a potential problem with the majority's interpretation of OCGA § 13-2-2 (7). I believe the exclusion of computer-generated forms from the scope of this Code section is unnecessary to a decision in this case and could create difficulties in the area of contract interpretation.

As the majority acknowledges, a cursory examination of the contract in question shows it was prepared by Dairyland with the assistance of a computer word processing program allowing the insertion of names and phrases into an existing form document. This document is no less a "form" because it exists in a computer's memory rather than on paper. I believe it is reasonable to conclude, contrary to the majority's assertion, that this computer-generated document is the modern equivalent of the offset-printed "fill-in-the-blanks form," which shows signs of following the Linotype, carbon paper, and the scrivener into obscurity. A holding that forms generated by computer are somehow *not* forms will cause unanticipated and sometimes severe consequences in businesses which have already adopted these forms for general use.

DECIDED APRIL 19, 1995.

*Cruz & Associates, Daniel J. Castan*, for appellants.
*Eason, Kennedy & Associates, Richard B. Eason, Jr.*, for appellee.