[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT #109
On March 26, 1996, the plaintiff, Live Wire, Inc. ("Live Wire"), and the defendant, Southwire Company ("Southwire") entered into a contract for Live Wire's purchase of assets from Southwire. The agreement contained a provision which called for the adjustment of the purchase price based on the value of certain inventory.
At some point, a dispute arose as to the inclusion of certain inventory in the calculation of the purchase price adjustment. Acting pursuant to contract provision § 11.04, both parties agreed to select an independent third-party accountant, KMPG Peat Marwick ("Peat Marwick"), to resolve the pertinent question as to the inclusion of this certain property.
Pursuant to the agreement, Peat Marwick reviewed submissions of both parties and, on May 31, 1996, rendered a decision favorable to Southwire. The decision, which strictly addressed the inclusion of the property for purposes of purchase price adjustment, contained no discussion or explanation as to how the CT Page 15605 independent accountant reached its decision.
On November 7, 1997, Live Wire filed an amended complaint against Southwire seeking both damages and declaratory relief arising from Southwire's alleged breach of contract. In particular, Live Wire asks that the court declare the Peat Marwick ruling inconsistent with and contrary to the contract between the parties and, furthermore, asks that the Peat Marwick decision be reversed and vacated.
In a motion refiled October 8, 1998, Southwire moves for summary judgment on the grounds that there are no material issues of fact in dispute and that it is entitled to judgment as a matter of law. In particular, Southwire argues that the Peat Marwick decision is a binding arbitration, thus, the court does not have the power to revisit issues previously decided in a forum agreed to by both parties. As the Peat Marwick decision is a binding arbitration, Southwire argues, federal law prohibits a party from seeking enforcement or modification more than three months after that issue was decided.
Live Wire, on the other hand, argues that unlike the binding contractual provision of § 11.05, the decision rendered by Peat Marwick in accordance with § 11.04 is not an arbitration but merely an appraisal. According to Live Wire, issues of fact exist as to whether the parties intended this appraisal process to be the equivalent of binding arbitration. As the parties' intent in enacting certain contractual provisions is a question of fact, Live Wire maintains that summary judgment is inappropriate.
Section 11.04 of the contract states, in pertinent part, that: "(a) In the event of any dispute between Buyer and Seller over any claim by or on behalf of Buyer for reimbursement with respect to any liability or claim relating to the Financial Statements of Seller, the accounting for any Asset or Assumed Obligations or determination of adjustment as provided in paragraph 1.03(e), Buyer and Seller shall jointly select a national firm of independent accountants . . . which shall consider and decide such dispute." Section (b) of 11.04 states that, with the exception of the situations enumerated in 11.04(a), "all other disputes shall be resolved as provided by arbitration as set forth in paragraph 11.05." That provision, in turn, sets forth the various requirements and procedures to be followed by the parties and arbitrators. Unlike 11.04, paragraph CT Page 15606 11.05(c) expressly states that the "award rendered by the arbitrator shall be final and binding upon the parties and judgment may be entered in any court having jurisdiction thereof in accordance with applicable law."
Southwire argues that even though the determination of Peat Marwick was made pursuant to 11.04, it is final, binding and unavailable for review by the court at this time. In support of its argument, Southwire alludes to communications from Peat Marwick to the parties that describes its role as that of a binding arbitrator. (Southwire's Motion for Summary Judgment, Affidavit of William V. Hearnburg, Exhibits B, C.) Additionally, Southwire relies on the plaintiff's previous action brought in federal court. According to Southwire, the present action is nearly identical to the plaintiff's prior federal claim with the notable exception that Live Wire now refers to Peat Marwick's determination as an appraisal rather than an arbitration. Southwire claims that Live Wire voluntarily withdrew the federal suit upon realizing that its arbitration appeal was untimely under federal law and the instant matter is merely the plaintiff's attempt to circumvent the previous outcome. Thus, Southwire concludes, as a matter of law, Live Wire should be estopped by its previous claims and admissions from reinstating the controversy at hand.
In opposition to the motion for summary judgment, Live Wire refers to the language of the contract itself. Since paragraph 11.05 is substantially different from paragraph 11.04, Live Wire argues that the latter provision cannot be considered a binding arbitration as would any decision rendered under 11.05. Specifically, Live Wire maintains that 11.04 does not allow for procedures, such as hearings or the ability to cross-examine witnesses, that are an integral part of arbitration. Furthermore, Live Wire contends that 11.04 is specifically limited to certain situations that require the selection of an accounting firm to perform an appraisal and decide the dispute. Accordingly, Live Wire argues that the parties deliberately established two different mechanisms. Live Wire argues, therefore, that whether 11.04 was meant to be binding to the same extent expressly stated by 11.05 is a question of intent that cannot be appropriately decided on a motion for summary judgment.
Paragraph 13.09 of the contract provides that "This agreement shall be governed by the laws of the State of Georgia . . . as to all matters, including, but not limited to, matters of validity, CT Page 15607 construction, effect and performance." Since Georgia has a substantial relationship to the parties and transaction at hand[1] and Connecticut does not possess a greater material interest in the determination of the issue, this court must apply Georgia Law in interpreting the contract. See Elgar v. Elgar,238 Conn. 839, 850, 679 A.2d 937 (1996).
"In the construction of a contract, the cardinal rule is to ascertain the intention of the parties . . . The construction of a contract is a question of law for the court. Where any matter of fact is involved, the jury should find the fact . . . Construction of ambiguous contracts is the duty of the court, and no jury question is raised unless after application of the pertinent rules of construction the ambiguity remains . . ." (Citations omitted; internal quotation marks omitted.) UDMTechnology v. Sterling Software, 225 Ga. App. 451, 452,484 S.E.2d 3 (1997).
Since the evidence offered on this motion for summary judgment is of a limited nature, the applicable rules of contract construction provided for by the Official Code of Georgia § 13-2-2[2] do not shed insight on whether the use of an accountant as provided for by contract provision 11.04 is a final and binding arbitration and thus the ambiguity of that provision remains. Thus, "if the court cannot resolve the ambiguity by application of the pertinent rules of construction, the intention of the parties is a question for the jury . . ." Id.
However, the Official Code of Georgia § 13-2-4 also provides that "the intention of the parties may differ among themselves. In such case, the meaning placed on the contract by one party and known to be thus understood by the other party at the time shall be held as the true meaning." Thus, if Live Wire knew that Southwire construed contract provision 11.04 to be binding, then Southwire's understanding of 11.04 would, as matter of law, resolve the ambiguity in favor of Southwire's interpretation.
In its motion for summary judgment, however, Southwire has not met its burden of showing that Live Wire was aware of Southwire's understanding of the contractual provision as binding. While Southwire has included a letter from Peat Marwick that states that the arbitration is to be considered binding, Southwire has only produced a copy signed by its agent. Thus, even though there is evidence that Southwire considered Peat CT Page 15608 Marwick's decision to be binding, there remain questions of fact as to whether Live Wire had reason to be aware of such an understanding. Moreover, "[i]t is the parties' intent at the time the contract is made that governs; if the language of a contract may be understood fairly in more ways than one, it should be construed to reflect the sense in which the parties themselves understood it at the time of execution . . ." (Citations omitted; internal quotation marks omitted.) Dooley v. Dun Bradstreet Software, 225 Ga. App. 63, 65, 483 S.E.2d 308 (1997). Southwire has not offered any evidence to suggest what the intent of the parties was at the time the contract was made. Since an ambiguity appears concerning the effect of 11.04, there are genuine issues of material fact which preclude the granting of a motion for summary judgment.
Southwire, however, also argues that under Georgia law, there is no difference between a binding arbitration and an appraisal. Southwire maintains that even if provision 11.04 does not provide for a binding arbitration, it possesses the same effect as one and is just as binding and final. Southwire cites SouthernGeneral Ins. Co. v. Kent, 187 Ga. App. 496, 497, 370 S.E.2d 663
(1988) for the proposition that "[a]n appraisement award is the result of a contractual method of ascertaining the amount of loss, and it is binding on the parties as to the amount of loss unless the award is set aside . . . There exists a presumption in favor of the regularity and fairness of appraisement awards, and it is difficult to set them aside . . . While an award may be attacked for any reason that would void a contract, as well as for fraud in the arbitration or in either party in obtaining the award, for a palpable mistake of law or for deciding any matter by chance or lot, where there is no evidence of fraud, oppression, irregularity, or unfairness, other than on the disputed issue, a verdict in the amount of the award is demanded." (Citations omitted; internal quotation marks omitted.) Id.
While Southwire may be correct that Kent stands for the proposition that an appraisal is as binding as an arbitration, the holding in Kent is, nonetheless, inapplicable to the present motion for summary judgment. While the Georgia Arbitration Code, Official Georgia Code § 9-9-1, and the Federal Arbitration Act, 9 U.S.C. § 1 (1947), et. seq.,[3] have specifically prohibited the filing of an application to vacate an arbitration award more than three months after the rendering of an award, theKent court was silent as to whether these provisions apply to an CT Page 15609 appraisal. As pointed out by Live Wire, arbitration awards must follow statutorily created procedures and methods that appraisals frequently do not meet. Though, pursuant to the Official Georgia Code § 9-9-8(f), these procedures and methods may be waived, it is unclear whether Live Wire has waived any of these provisions. Thus, the question whether the Georgia legislature meant to apply the time provisions of the Georgia Arbitration Code to third-party determinations which do not follow the procedural mechanisms of that statute, but may be binding nonetheless, is an issue that cannot be decided on this motion for summary judgment.
Finally, Southwire argues that Live Wire's previous pleadings in a federal case are tantamount to admissions that have the effect of collateral estoppel/res judicata. Southwire argues that though the federal action was voluntarily withdrawn, Live Wire's labeling of Peat Marwick's decision as an "arbitration" should be determinative in the present case and prohibit Live Wire from bringing a nearly identical action which merely substitutes "ruling" for "arbitration."
"Claim preclusion (res judicata) and issue preclusion (collateral estoppel) have been described as related ideas on a continuum. [C]laim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits . . . [I]ssue preclusion, prevents a party from relitigating an issue that has been determined in a prior suit."Mazziotti v. Allstate Ins. Co., 240 Conn. 799, 812,695 A.2d 1010 (1997). Since both res judicata and collateral estoppel entail a final determination, Live Wire's previous federal action, which was voluntarily withdrawn, does not consist of a final determination that would preclude Live Wire from revisiting an identical issue in the present case.
Moreover, even if Live Wire's pleadings in the withdrawn action are considered admissions for the present action, such an admission would be inappropriately considered on a motion for summary judgment. Judicial admissions are conclusive only in the judicial proceedings in which they are made. Chapman v. Franford, Superior Court, judicial district of New London at New London, Docket No. 536034 (April 24, 1997) (Handy, J.). "In subsequent proceedings such prior judicial admissions are merely evidential admissions, to be used as evidence to prove a matter in dispute in the subsequent trial." Perry v. Simpson Waterproof Mfg. Co.,40 Conn. 313, 317 (1873). See also Practice Book § 240, now CT Page 15610 Practice Book (1998 Rev.) § 13-24 ("any admission made by a party under this section is for the purpose of the pending action and is not an admission by him or her for any other purpose nor may it be used against him or her in any other proceeding").
The court finds that there is a genuine issue of material fact as to whether the parties intended contractual provision 11.04 to be as final and binding as contractual provision 11.05. Furthermore, the court finds that there is a question as to whether 11.04, which lacks the procedural mechanisms of 11.05, is subject to the Georgia Arbitration Code which provides that an application to vacate an arbitration award must be filed within three months of the award. Finally, the court finds that any previous admissions by Live Wire must be weighed by the trier of fact and cannot be the basis for granting a motion for summary judgment.
Accordingly, the motion for summary judgment is denied.
Martin, J.