**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER, J., and SENIOR APPELLATE JUDGE PHIPPS.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 5, 2021**

# In the Court of Appeals of Georgia

A20A1672. PATEL v. DIPLOMAT 1419VA HOTELS, LLC et al.

PHIPPS, Senior Appellate Judge.

This case concerns Vimla Patel's investment in Diplomat 1419VA Hotels, LLC ("Diplomat 1419VA"). After her death, her son, Paresh Patel, filed suit against Diplomat 1419VA; Mukesh ("Mike") Patel; Diplomat Companies, LLC; 218 Capital Partners, LLC; JMS Family, LP; Chelsea Capital Partners, LLC; Stamford Bridge Capital, LLC; RM Kids, LLC; RM Hotels, Inc.; Shama Patel; and Jay Patel, setting forth numerous claims regarding the alleged mismanagement of Vimla's investment. Paresh[1] appeals from the trial court's order granting summary judgment to the defendants, contending that the court erred in granting summary judgment on his

---

[1] Because numerous individuals in this case share the same last name, Patel, we will refer to them by their first names for the sake of clarity.

claims for (1) fraud; (2) fraudulent transfers; (3) breach of contract; (4) conspiracy; and (5) equitable relief and attorney fees. Because the defendants are entitled to judgment as a matter of law on all of Paresh's claims, we affirm the trial court's order.

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[.]" OCGA § 9-11-56 (c). A defendant may prevail

> by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial.

*Patterson v. Kevon, LLC*, 304 Ga. 232, 235 (818 SE2d 575) (2018). On appeal, this Court conducts a de novo review, "construing the evidence in the light most favorable to the nonmovants and drawing every reasonable inference in their favor." Id. at 236 (citation omitted).

2

Viewed in the light most favorable to Paresh, the record shows that in 2000 or 2001, Mike and Rajesh C. Patel ("RC") created Diplomat 1419VA, a Georgia limited liability company. RC and Vimla had known each other for many years, and in June 2001, Vimla, her husband, Surendra Patel, and one of their daughters met with Mike, RC, and RC's wife, Shama, to discuss investing in a hotel near the Atlanta airport. Mike, RC, and Shama all represented that Diplomat 1419VA would purchase, own, and operate the hotel.

Paresh, who was not at the 2001 meeting, but nevertheless advised his parents on the investment, testified that that his parents relied on these representations in investing in Diplomat 1419VA. Ultimately, Vimla invested $450,000 in Diplomat 1419VA, equal to a 10.5 percent ownership interest.

In fact, Diplomat 1419VA did not purchase the hotel. Rather, in order to avoid tax liability, RM Hotels, Inc., a different entity in which Mike and RC had an interest, purchased the hotel in January 2002. Diplomat 1419VA leased the hotel from RM Hotels, and a third entity, Diplomat Hotel Corporation, with which Mike was also affiliated, managed the hotel.

In 2010, RM Hotels learned that Delta Air Lines did not intend to renew a lucrative contract for rooms, and, as a result, RM Hotels filed for bankruptcy. In

3

December 2011, RM Hotels sold the hotel to Surrey Capital, LLC, an entity controlled by Jay Patel, RC and Shama's son. Delta Air Lines continued to buy rooms from the hotel for several years, but ultimately ceased doing so and revenues from the hotel dropped precipitously. Surrey Capital ultimately filed for bankruptcy, and it no longer owns the hotel.

Although Diplomat 1419VA never owned or operated the hotel, it nevertheless made the following interest payments to Vimla in accordance with its operating agreement: in 2002, it made payments totaling $36,000; in 2003, it made payments totaling $10,500; in 2004, it made no payments; in 2005, it made payments totaling $12,000; and in 2006, it made payments totaling $36,000.

Vimla passed away in July 2006. After her death, Diplomat 1419VA continued to make payments on her behalf to Paresh and his sisters. In 2007, 2008, and 2009, Diplomat 1419VA made payments of $36,000 each year on behalf of Vimla. In 2010, Diplomat 1419VA made payments of $12,000; in 2012, it made payments totaling $25,500. Diplomat 1419VA made no payments on behalf of Vimla in 2011, the year the hotel was sold to Surrey Capital, or in 2013, 2014, and 2015. In 2015, the Diplomat 1419VA corporation was terminated. Between 2002 and 2012, Diplomat 1419VA made payments to Vimla and her family members totaling $240,000.

4

By 2012, Paresh had become unhappy with the investment. In 2013, he filed suit in federal court against various defendants, including Diplomat 1419VA, Mike, and RC. The federal district court initially dismissed Paresh's underlying claims for civil conspiracy, fraud, breach of fiduciary duty, alter ego/piercing the corporate veil, fraudulent transfers, and breach of contract, and it rejected his request for equitable remedies and attorney fees. But in an unpublished opinion, the 11th Circuit Court of Appeals reversed the district court's decision because the district court failed to grant Paresh leave to amend his complaint. *Patel v. Diplomat 1419VA Hotels, LLC*, No. 14-10948 (11th Cir. June 3, 2015). On remand, the federal district court again dismissed Paresh's claim for fraud, finding that he had failed to allege the claim with specificity, but otherwise denied the defendants' motion to dismiss. However, in November 2016, the federal district court dismissed Paresh's complaint for lack of subject matter jurisdiction.

In 2017, Paresh, suing in his individual capacity, filed the instant action in Gwinnett County Superior Court, setting forth claims against the defendants[2] for

---

[2] Because RC had filed for bankruptcy in 2016, Paresh did not name him as a defendant in the superior court action.

breach of contract, fraud, fraudulent transfers, and conspiracy. The complaint sought alter ego/piercing of the corporate veil, an interlocutory injunction, a constructive trust, an accounting, appointment of a receiver, and attorney fees. The trial court entered a default judgment against Mike.[3] The remaining defendants (collectively, "the defendants") filed a motion for summary judgment, and, following a hearing, the trial court granted summary judgment on all of Paresh's claims.

Specifically, the trial court granted summary judgment on the fraud claims, finding that Paresh could not show that he relied on any misrepresentations made by Mike, Shama, or RC because he made no investment in Diplomat 1419VA. The court further found that Paresh did not have standing to assert a claim for fraud against Vimla because such claims were not assignable, and, even if fraud claims were assignable, Vimla had not assigned any claims to him. Similarly, the court found that Paresh did not have standing to assert any claims for fraudulent transfers that occurred prior to his mother's death and that he failed to identify any specific transfers after her death that he alleged were fraudulent. The court also granted summary judgment on Paresh's claim for breach of contract. Because it granted

---

[3] Paresh's complaint also included a claim against Mike for breach of fiduciary duty. Mike is not a party to this appeal.

6

summary judgment on Paresh's underlying claims, the trial court granted summary judgment on his claims for civil conspiracy and his requests for equitable relief and attorney fees. Paresh appeals.

1. Paresh contends that the trial court erred in granting summary judgment on the fraud claims against Mike, Shama, and Diplomat 1419VA.[4]

"In all averments of fraud or mistake, the circumstance constituting fraud or mistake shall be stated with particularity." OCGA § 9-11-9 (b). In his complaint, Paresh alleged that Mike, Shama, and Diplomat 1419VA made misrepresentations to induce him, Vimla, and Surendra[5] to invest in the hotel, and they relied on these misrepresentations in making an investment in the hotel in Vimla's name.

(a) In two related claims of error, Paresh contends that he has standing to maintain the fraud claims because he inherited Vimla's interest in Diplomat 1419VA and the trial court erred in ruling to the contrary. We disagree.

"A trial court's decision with respect to standing will not be reversed absent clear error, although we review de novo any questions of law inherent in that

---

[4] We have taken Paresh's claims of error out of the order in which he has listed them in his brief and have combined related claims of error. See, e.g., *Foster v. Morrison*, 177 Ga. App. 250, 250 (1) (339 SE2d 307) (1985).

[5] Surendra is not a party to this action.

7

decision." *Harden v. Banks County*, 294 Ga. App. 327, 328 (1) (670 SE2d 133) (2008) (footnote omitted).

In Vimla's will, she gave "any interest in any property located in the United States, specifically including but not limited to, partnership interests in U.S. partnerships . . . in equal shares" to Paresh and his sisters. In 2012, Paresh's sisters transferred their interests in Diplomat 1419VA to Paresh. Thus, following Vimla's death and the transfers, Vimla's prior interest in Diplomat 1419VA became Paresh's interest.[6] But contrary to Paresh's argument, Vimla's bequest of her interest in Diplomat 1419VA to him does not confer upon him standing to assert a claim that Vimla was defrauded.

Pursuant to OCGA § 44-12-24, "a right of action is assignable if it involves, directly or indirectly, a right of property. A right of action for personal torts, for legal malpractice, or for injuries arising from fraud to the assignor may not be assigned." Consistent with the plain language of the statute, federal and state courts construing

---

[6] An interest in a limited liability company is personal property, and it is assignable unless otherwise provided in the written operating agreement. See OCGA §§ 14-11-501 (a) ("A limited liability company interest is personal property."); 14-11-502 (1) ("Except as otherwise provided in the articles of organization or a written operating agreement . . . [a] limited liability company interest is assignable in whole or in part[.]"). The operating agreement for Diplomat 1419VA did not prohibit assignment.

8

OCGA § 44-12-24 have held that fraud claims are not assignable. See *Villanueva v. First American Title Ins. Co.*, 292 Ga. 630, 631 (740 SE2d 108) (2013) ("The common law recognizes assignment of property damage claims but not personal injury claims, and OCGA § 44-12-24 codifies these principles."); *Couch v. Crane*, 142 Ga. 22, 29 (8) (82 SE 459) (1914) ("A right of action for injuries arising from fraud [cannot] be assigned."); *In re Pittard*, 358 BR 457, 461 (I) (N.D. Ga. 2006) ("While a judgment based on fraud may be assigned, a right of action for fraud may not.").

Paresh argues that the instant claims for fraud are distinguishable from the cases listed above and assignable because they involve a right of property: the interest in Diplomat 1419VA. But Paresh's fraud claims do not involve a right of property. Paresh claims that Mike, Shama, and Diplomat 1419VA misrepresented their intentions regarding the ownership of the hotel to induce Vimla's investment. "This is a right of action arising from alleged fraud, not a right to property[.]" *Pittard*, 358 BR at 461 (I). Because the claims are for fraud, they are not assignable. See *Couch*, 142 Ga. at 29 (8); *Pittard*, 358 BR at 461 (I); see also *Villanueva*, 292 Ga. at 631-632

9

(explaining that legal malpractice claims may sound in contract or in tort and that the former is assignable, while the latter is not).

Moreover, the case law does not support Paresh's contention that fraud claims are assignable if they involve a right of property. As an initial matter, it is hard to imagine a fraud claim that does not, in some way, concern a property interest. For example, in *In re Pittard*, the bankruptcy court determined that a bank's claim that a customer "allegedly misrepresented the state of his company's accounts receivable" in order to secure a loan was "a right of action arising from alleged fraud, not a right to property," such that the bank's right of action was not assignable under OCGA § 44-12-24. 358 BR at 461 (I). Paresh also cites *Clark v. Chapman*, 301 Ga. App. 117, 120 (687 SE2d 146) (2009), in support of his position, but *Clark* does not address assignments, fraud claims, or OCGA § 44-12-24. Id. Finally, Paresh cites *Sullivan v. Curling*, 149 Ga. 96 (99 SE 533) (1919), which considered the predecessor statute to OCGA § 44-12-24 and held that a claim for the negligent burning and destruction of wood – not fraud – was assignable because it involved a property interest. Id. at 99 (1).

To adopt Paresh's proposed construction of OCGA § 44-12-24 and permit the assignment of fraud claims that touch on property rights, we would have to disregard

the latter portion of the statute, which specifically prohibits the assignment of fraud claims. This we cannot do. See *In re: Estate of Jacqueline Gladstone*, 303 Ga. 547, 549 (814 SE2d 1) (2018) (providing that the fundamental rules of statutory construction require us to construe a statute "according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage").

Finally, we acknowledge that there are cases in which surviving heirs have been permitted to pursue fraud claims and other tort claims based on allegations that the decedents were defrauded prior to their deaths, but in those cases the plaintiffs were suing in their representative capacities on behalf of the estates. See, e.g., *Allen v. Dominy*, 272 Ga. 399, 400 (529 SE2d 363) (2000) (noting the plaintiff had standing to sue as a third-party beneficiary or in her representative capacity as decedent's widow); *Ealy v. Tolbert*, 209 Ga. 575, 576 (74 SE2d 867) (1953) (noting that equity permitted widow, as personal representative, to cancel deed); see also *Rogers v. Taintor*, 93 Ga. App. 54, 54-55 (1) (90 SE2d 629) (1955) ("The right to bring an action for the benefit of an estate vests exclusively in the legal representative of the estate if there be one, subject to the modification that in cases of fraud or collusion on the part of the representatives, the heirs, legatees or devisees may file a bill in

11

equity for the protection of their rights.") (punctuation omitted). In contrast, Paresh

has brought this action solely in his individual capacity. Accordingly, the trial court

did not err in concluding that Paresh lacked standing to pursue claims that Shama and

Diplomat 1419VA defrauded Vimla.[7]

(b) Paresh also contends that the trial court erred in ruling there was no

evidence of justifiable reliance to support the fraud claims. He argues that there is a

question of fact as to whether *he* relied on misrepresentations regarding the hotel

investment.[8] Again, we disagree.

---

[7] With regard to the fraud claims, Paresh also argues that the trial court erred in finding that Vimla did not bequeath to him any claims she had at the time of her death. Because we find that a claim for fraud is not assignable, we need not consider whether Vimla assigned any claims in her will. In his reply brief, Paresh also argues that he has standing to maintain the fraud claims because the cause of action for fraud did not accrue until 2012, after he had inherited Vimla's interest in Diplomat 1419VA. However, "this Court will not consider arguments raised for the first time in a reply brief." *Barron v. Wells Fargo Bank, N. A.*, 332 Ga. App. 180, 187 (4) (769 SE2d 830) (2015).

[8] In his brief, Paresh argues that there was evidence that Vimla and Surendra relied on the misrepresentations in making the investment. Although there is some evidence in the record that Vimla relied on the misrepresentations in making the investment, given our holding in Division 1 (a) that her fraud claims are not assignable, her reliance cannot support Paresh's fraud claims. Similarly, any evidence of reliance by Surendra is immaterial to Paresh's fraud claims. Thus, we need only consider the evidence of Paresh's reliance.

"The tort of fraud has five elements: (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages." *Lehman v. Keller*, 297 Ga. App. 371, 372-373 (1) (677 SE2d 415) (2009) (punctuation and footnote omitted). "So long as one essential element under any theory of recovery is lacking the defendant is entitled to summary judgment as a matter of law irrespective of any issues of fact with regard to other essential elements." *Nash v. Studdard*, 294 Ga. App. 845, 849 (1) (670 SE2d 508) (2008) (punctuation omitted).

As set forth above, Paresh alleges that Mike, Shama, and Diplomat 1419VA made misrepresentations to induce him and his parents to invest in the hotel, and they relied on these misrepresentations to make an investment in Vimla's name. But the evidence is undisputed that *Paresh* made no investment in Diplomat 1419VA. Because Paresh himself made no investment in Diplomat 1419VA, we agree with the trial court that he cannot show that he relied on any misrepresentations. See *Parsells v. Orkin Exterminating Co.*, 172 Ga. App. 74, 76 (322 SE2d 91) (1984) (finding "absolutely no evidence of at least the element of reliance by the appellant" when plaintiff did not act on defendants' alleged misrepresentations). Accordingly, Shama

and Diplomat 1419VA are entitled to summary judgment on Paresh's claim that he was defrauded.

For these reasons, the trial court did not err in granting summary judgment on the fraud claims.

2. Paresh also contends that the trial court erred in granting summary judgment on his claims against all of the defendants for fraudulent transfers under the Uniform Fraudulent Transfers Act, OCGA § 18-2-70 et seq.[9] Again, we find that the defendants are entitled to judgment as a matter of law.

(a) Like fraud claims, fraudulent transfer claims brought under the Uniform Fraudulent Transfers Act are not assignable. See *Security Feed & Seed Co. of Thomasville v. Ne Smith*, 213 Ga. 783, 783-784 (1) (102 SE2d 37) (1958) (holding that under predecessor statute to OCGA § 44-12-24 assignee could not seek to set aside allegedly fraudulent deed made prior to the assignment); *Callaway Blue Springs, LLLP v. West Basin Capital, LLC*, 341 Ga. App. 535, 538 (1) (801 SE2d 325) (2017) (holding that OCGA § 44-12-24 precludes assignment of fraudulent

---

[9] The Uniform Fraudulent Transfers Act was amended in 2015 and is now called the Uniform Voidable Transactions Act. See *EMM Credit, LLC v. Remington*, 343 Ga. App. 710, 716 (3) n.8 (808 SE2d 96) (2017). "These amendments apply to transfers made or obligations incurred on or after July 1, 2015." Id. (citation omitted).

transfer claim brought under the Uniform Fraudulent Transfers Act); *Merrill Ranch Properties, LLC v. Austell*, 336 Ga. App. 722, 731 (3) (784 SE2d 125) (2016) (holding that OCGA § 44-12-24 precludes assignee of debt from pursuing a pre-assignment fraudulent transfer claim). Accordingly, the trial court did not err in granting summary judgment as to any fraudulent transfer claims that allegedly occurred prior to Vimla's death in 2006, including Paresh's claim that the 2002 purchase of the hotel by RM Hotels constituted a fraudulent transfer.

(b) On appeal, Paresh asserts that fraudulent transfers occurred in December 2007 when RM Hotels refinanced the hotel. Under the version of OCGA § 18-2-74 in effect at that time,[10] in order to show a fraudulent transfer, the creditor needed to show that a transfer made or obligation incurred by a debtor was made or incurred:

> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (B) Intended to incur, or believed or reasonably should

---

[10] See supra note 9.

have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

OCGA § 18-2-74 (a) (2002).

Here, Paresh specifically alleged that fraudulent transfers occurred when RM Hotels refinanced the hotel in 2007, taking out a $10,000,000 loan which both encumbered Diplomat 1419VA in debt and enriched the defendants, who benefitted from cash disbursements from the loan proceeds. But the record contains no evidence showing the impact, if any, of RM Hotel's loan on Diplomat 1419VA's value. And although Paresh asserts that loan proceeds were distributed to Shama, Jay, RM Kids, and JMS Family, the record evidence only shows payments from RM Hotels to Mike and RC. As to the 2007 loan and disbursements, there is no evidence in the record that these transactions were made with the intent to defraud, were made without receiving a reasonably equivalent value in exchange, or were intended to incur debts beyond the ability to pay. Thus, the trial court did not err in granting summary judgment on the fraudulent transfer claims.

16

3. Paresh also contends that the trial court erred in granting summary judgment on his claim for breach of contract against Diplomat 1419VA.[11] Once again, we find that Diplomat 1419VA is entitled to judgment as a matter of law.

At least initially, the construction of a contract is a question of law for the court. *Woody's Steaks, LLC v. Pastoria*, 261 Ga. App. 815, 817 (1) (584 SE2d 41) (2003).

> First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.

Id. (citation omitted).

---

[11] We assume that Vimla's bequest was sufficient to confer upon Paresh standing to assert this claim for breach of contract. See *Villanueva*, 292 Ga. at 631 ("Georgia law . . . authorizes the assignment of all choses in action arising upon contract[.]"); see also OCGA §§ 44-12-22; 44-12-24.

The Diplomat 1419VA operating agreement stated: "[i]t is agreed that [Vimla's] capital contribution shall accrue at 8% interest and be payable by company on a semi-monthly basis subject to cash flow determined by general partners." Mike and RC served as the general partners.

Paresh argues that under this provision the interest accrued each month; the general partners only had discretion to determine when to pay it, not whether to pay it; and the unpaid interest carried over every month, to be paid later. But the language of the contract is clear and unambiguous: the interest was only payable subject to cash flow, as determined by the general partners. The contract does not provide that the unpaid interest carried over to be paid later.

Moreover, even if we were to find the contract provision to be ambiguous, "[t]he cardinal rule of contract construction is to determine the intent of the parties." *Dooley v. Dun & Bradstreet Software Svcs., Inc.*, 225 Ga. App. 63, 65 (1) (483 SE2d 308) (1997). "It is the parties' intent at the time the contract is made that governs; if the language of a contract may be understood fairly in more than one way, it should be construed to reflect the sense in which the parties themselves understood it at the time of execution. Extrinsic evidence is admissible to establish that understanding." Id. (citation omitted). Here, the undisputed evidence shows that, both before and after

18

Vimla's death, full interest payments of $36,000 were made some years, partial interest payments were made in other years, and no interest payments were made in some years. The interest not paid was never carried over and paid later. This constitutes evidence that the contracting parties' intent was that the payments were discretionary, based on cash flow, and not intended to be carried over.[12]

Paresh also argues that the trial court ignored that Mike and RC, in determining whether to make interest payments, were required to do so in good faith. See generally *ULQ, LLC v. Meder*, 293 Ga. App. 176, 179 (1) (666 SE2d 713) (2008) ("[W]here the manner of performance is left more or less to the discretion of one of the parties to the contract, he is bound to the exercise of good faith.") (emphasis omitted).

As an initial matter, there is an exception to the general good-faith requirement when "an agreement by its express terms grants the party absolute or uncontrolled discretion in making a decision[.]" Id. Here, the operating agreement authorized its

---

[12] Although Paresh testified that he believed the provision provided for mandatory payments, he was not a party to the contract at the time it was made. *Dooley*, 225 Ga. App. at 65 (1) ("It is the parties' intent at the time the contract is made that governs[.]").

managers, Mike and RC, "full and complete authority, power and discretion to manage and control the business affairs" of Diplomat 1419VA.

But even assuming the payments were subject to the general good-faith requirement, the record contains no evidence regarding Diplomat 1419VA's monthly cash flow, and the only evidence as to interest payments is that they were made when permitted by cash flow. There is simply no evidence that the payments were not made in good faith. Accordingly, the trial court did not err in granting summary judgment on Paresh's claim for breach of contract.

4. Paresh also contends that the trial court erred in granting summary judgment on his claim for conspiracy against all of the defendants. He argues both that the court erred in granting summary judgment on his underlying claims for fraud and fraudulent transfers and that his claim against Mike for breach of fiduciary duty survives because default judgment was entered against Mike. We find no error.

"A conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means." *Mustaqeem-Graydon v. SunTrust Bank*, 258 Ga. App. 200, 207 (6) (573 SE2d 455) (2002) (punctuation omitted). "To recover damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in conduct

20

that constitutes a tort. Absent the underlying tort, there can be no liability for civil conspiracy." Id. (citation and punctuation omitted). In this case, because Paresh's underlying tort claims – for fraud and fraudulent transfers – fail, he cannot maintain a claim for conspiracy. See id. Moreover, to the extent that Paresh's claims against Mike survive, "more than one [person] is necessary to form a conspiracy." *Budd v. Saddler Realty, Inc.*, 150 Ga. App. 148, 152 (2) (257 SE2d 1) (1979). Accordingly, any claims against Mike, standing alone, cannot support a claim for conspiracy.

5. Finally, Paresh summarily contends that the trial court erred in granting summary judgment on his claims for relief, including alter ego/piercing the corporate veil, interlocutory injunction, constructive trust, accounting, appointment of a receiver, and attorney fees. Because Paresh's underlying claims against the defendants fail, his derivative claims for relief and attorney fees also fail. See generally *Wright v. Apartment Investment and Mgmt. Co.*, 315 Ga. App. 587, 590 (1) (a) n.6 (726 SE2d 779) (2012) (noting that derivative claims for punitive damages and attorney fees failed when underlying tort claims failed); *Johnson v. Johnson*, 323 Ga. App. 836, 842 (747 SE2d 518) (2013) (same).

For all these reasons, we affirm the trial court's grant of summary judgment on all claims.

*Judgment affirmed. Miller, P. J., and Mercier, J., concur*.